IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES P. VICE,<br><br>    Plaintiff,<br><br>  v.<br><br>WOODLINE USA, INC.,<br><br>    Defendant.<br>_____/ | No. C 10-04103 CW<br><br>ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, TO TRANSFER, AND TO STRIKE DECLARATION OF DAVID HUGHES (Docket No. 7 and 27) |

Plaintiff James P. Vice charges Defendant Woodline USA, Inc., with patent infringement. Defendant moves to dismiss his action for lack of personal jurisdiction and improper venue. In the alternative, Defendant moves to transfer this action to the Middle District of Tennessee. Plaintiff opposes the motions. After briefing had closed on these motions, Defendant filed a motion to strike the declaration of David Hughes, tendered in support of Plaintiff's opposition. Plaintiff did not file a response to Defendant's motion to strike. The motions were taken under submission on the papers. Having considered the papers submitted by the parties, the Court DENIES Defendant's motion to dismiss, alternative motion to transfer and motion to strike.

BACKGROUND

Plaintiff is a California resident. He accuses Defendant, a Tennessee corporation with a principal place of business in

1  Tennessee, of infringing U.S. Patent No. 7,240,704 ('704 patent),
2  which he allegedly owns.  The '704 patent claims a woodworking tool
3  known as a dado guide.  Plaintiff's DADOWIZ device embodies the
4  '704 patent.

5      Plaintiff claims that he met Wayne Sutter, Defendant's
6  president, in April, 2004, at a woodworking trade show in
7  Sacramento, California.  They discussed a potential licensing
8  agreement concerning the DADOWIZ.  During their negotiations,
9  Plaintiff provided Sutter with a DADOWIZ.  They executed a non-
10 disclosure agreement, which was governed by the laws of Tennessee
11 and prohibited either party from disclosing any proprietary
12 information shared during negotiations.  The parties ultimately
13 were not able to agree on the terms of a license.

14     Plaintiff claims that, during their discussions and without
15 his approval, Sutter sent the DADOWIZ to China for "copycat
16 manufacturing."  Vice Decl. ¶ 6.  Sutter acknowledges this, but
17 asserts that Plaintiff knew of and assented to it.

18     Defendant asserts that, in 2008, it designed its own dado
19 guide device called the DADOMAX.  Plaintiff alleges that the
20 DADOMAX infringes the '704 patent.

21     Sutter asserts that Defendant does not have employees or
22 offices in California.  He acknowledges that, in 2009, Defendant
23 attended two woodworking trade shows in California, one of which
24 was held in this judicial district, and that Defendant sold the
25 DADOMAX product at these shows.  Sutter also states that Defendant
26 "may ship some catalogs to California."  Sutter Decl. ¶ 7.
27 Finally, Sutter admits that Defendant operates a website, on which

2

the "DADOMAX was placed for sale." Id. ¶ 5. The website, however, does not cater specifically to California residents. Defendant represents that fewer than fifty units of the DADOMAX were sold in 2009.

DISCUSSION

I.  Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of personal jurisdiction. In a suit alleging patent infringement, Federal Circuit law is applied to determine whether the district court has personal jurisdiction over an out-of-state corporation. Avocent Huntsville Corp., et al. v. Aten Int'l Co., Ltd., 552 F.3d 1324, 1328 (Fed. Cir. 2008).

Where a district court's disposition of the personal jurisdiction question is based on affidavits and other written materials, a plaintiff need only make a prima facie showing that the defendant is subject to personal jurisdiction. Trintec Indus., Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1282 (Fed. Cir. 2005). The district court must construe all pleadings and affidavits in the light most favorable to the plaintiff and resolve any factual conflicts in the affidavits in the plaintiff's favor. Id. at 1282-83; Elecs. For Imaging, Inc. v. Coyle, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

"Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the

3

assertion of personal jurisdiction would violate due process." <u>Inamed Corp. v. Kuzmak</u>, 249 F.3d 1356, 1359 (Fed. Cir. 2001). California's jurisdictional statute is co-extensive with federal due process requirements; therefore, jurisdictional inquiries under state law and federal due process standards merge into one analysis: "whether jurisdiction comports with due process." <u>Id.</u> at 1360.

The exercise of jurisdiction over non-resident defendants violates due process unless those defendants have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958). Personal jurisdiction may be either general or specific.

Pursuant to Rule 12(b)(3), a defendant may move to dismiss an action for improper venue. Under 28 U.S.C. § 1400(b), "Any civil action for patent infringement may be brought in the judicial district where the defendant resides." For the purposes of this statute, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c); <u>VE Holding Corp. v. Johnson Gas Appliance Co.</u>, 917 F.2d 1574, 1580 (Fed. Cir. 1990). "Venue in a patent action against a corporate defendant exists wherever there is personal

4

jurisdiction." <u>Trintec Indus.</u>, 395 F.3d at 1280.

    A.   General Jurisdiction

General jurisdiction exists when a defendant maintains "continuous and systematic" contacts with the forum state even if the cause of action has no relation to those contacts. <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 (1984). The standard for establishing general jurisdiction is "fairly high." <u>Id.</u> Random, fortuitous, or attenuated contacts do not count in the minimum contacts calculus. <u>Burger King v. Rudzewicz</u>, 471 U.S. 462, 475 (1985). Factors considered in evaluating the extent of contacts include whether the defendant makes sales, solicits or engages in business, designates an agent for service of process, holds a license, or is incorporated in the forum state. <u>Bancroft & Masters, Inc. v. Augusta Nat'l Inc.</u>, 223 F.3d 1082, 1086 (9th Cir. 2000).

Plaintiff argues that the Court has general jurisdiction over Defendant because it attends two annual trade shows in California. Courts have held, however, that trade show attendance does not constitute the sufficiently continuous and systematic contact necessary to justify general jurisdiction. <u>See, e.g.</u>, <u>Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico</u>, 563 F.3d 1285, 1297 (Fed. Cir. 2009); <u>Jackson v. Tanfoglio Giuseppe, S.R.L.</u>, 615 F.3d 579, 584-85 (5th Cir. 2010). Plaintiff cites no authority to the contrary.

Plaintiff also asserts that Defendant's website supports the exercise of general jurisdiction. However, the website appears to be accessible by any consumer; it is not directed specifically at

5

California.  Such a website, even if interactive in nature, is not sufficient to support a court's exercise of general jurisdiction.  See Campbell Pet Co. v. Miale, 542 F.3d 879, 883-84 (Fed. Cir. 2008); Trintec Indus., 395 F.3d at 1281.  Plaintiff points to one testimonial, purportedly written by a California resident, posted on the website.  Even if this individual purchased products from Defendant's website, there is no evidence that this generated the volume of sales necessary to support general jurisdiction.  See Campbell Pet Co., 542 F.3d at 884 (concluding that twelve sales to forum residents for a total of $14,000 in gross revenue did not reflect sufficiently substantial and continuous conduct).

Accordingly, Plaintiff fails to establish that the Court may exercise general jurisdiction over Defendant.

B.   Specific Jurisdiction

Specific jurisdiction exists when the cause of action arises out of or relates to a defendant's contacts with the forum state, even if those contacts are isolated and sporadic.  Trintec Indus., 395 F.3d at 1279.  The Federal Circuit has identified three factors to consider in determining whether the exercise of specific personal jurisdiction over an out-of-state defendant comports with due process: (1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities in the forum; and (3) whether the exercise of jurisdiction is "reasonable and fair."  Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1351 (Fed. Cir. 2002).

Here, Defendant acknowledges that it has directly sold and

6

shipped the allegedly infringing DADOMAX to California residents, which supports Plaintiff's assertion that Defendant purposefully directed its conduct toward California. The sale of an infringing article to a buyer in a forum state amounts to the commission of a tort in that state. N. Am. Philips Corp. v. Am. Vending Sales, Inc., 35 F.3d 1576, 1579 (Fed. Cir. 1994). Defendant nevertheless argues that specific jurisdiction is not appropriate because it does not have any established distribution channels in California, but instead uses "common carriers" to deliver its goods to the state. See Sutter Reply Decl., ¶ 4. It points to Beverly Hills Fan Co. v. Royal Sovereign Corp., in which the Federal Circuit held that specific personal jurisdiction exists where an allegedly infringing product is sold in the forum through an established distribution channel. 21 F.3d 1558, 1565 (Fed. Cir. 1994). Defendant appears to read Beverly Hills Fan to condition specific jurisdiction on a party's control or ownership of the distribution network that delivered an allegedly infringing product to the forum state.

No such requirement exists. In Beverly Hills Fan, the defendants asserted that personal jurisdiction was precluded by World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980), in which the Supreme Court held that personal jurisdiction did not lie over a defendant whose product entered the forum state through the unilateral acts of a third party not associated with the defendant. 21 F.3d at 1565. The Federal Circuit rejected this argument. Although the Beverly Hills Fan defendants did not sell the product directly to the retail consumer, personal jurisdiction

7

1  over them was appropriate because their product was sold through an
2  intermediary with which they had a relationship.  Id. at 1563-65.
3  The term "established distribution channel" referred to this
4  intermediary that sold the defendants' product to the retail
5  customer.  Here, Defendant sells the DADOMAX to California
6  residents directly, not through an intermediary.  Thus, Defendant's
7  contacts with California are less attenuated than those of the
8  Beverly Hills Fan defendants.  Several courts have concluded that
9  specific jurisdiction is appropriate over a defendant that sells
10 allegedly infringing products through its website and ships them to
11 the forum state.  See, e.g., L'Athene, Inc. v. EarthSpring LLC, 570
12 F. Supp. 2d 588, 593 (D. Del. 2008); Cornice Techs., Inc. v.
13 Affinity Dental Prods., Inc., 2005 WL 1712124, at *6 (D. Colo.
14 2005); IP Innovation, L.L.C. v. RealNetworks, Inc., 310 F. Supp. 2d
15 1209, 1213 (W.D. Wash. 2004).

16      Relying on the "effects test" established in Calder v. Jones,
17 465 U.S. 783 (1984), Defendant also argues that it did not
18 purposefully direct its actions toward California because it "did
19 not knowingly cause Plaintiff to suffer harm."  Mot. 13.  However,
20 Defendant admits that it sold the DADOMAX in California in 2009,
21 long after the parties abandoned their licensing negotiations in
22 May, 2007 and after Plaintiff obtained the '704 patent for the
23 DADOWIZ in July, 2007.  Thus, viewed in the light most favorable to
24 Plaintiff, the record suggests that Defendant reasonably foresaw
25 that it could have injured Plaintiff by selling and shipping the
26 allegedly infringing DADOMAX to California residents.

27      Because Plaintiff's infringement action arises out of

8

Defendant's purposeful sale and shipment of the DADOMAX into California, the exercise of specific jurisdiction is appropriate so long as it is reasonable.  Specific jurisdiction, notwithstanding minimum contacts, may be defeated in "the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum."  Beverly Hills Fan, 21 F.3d at 1568.  "The reasonableness inquiry encompasses factors including (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies."  Coyle, 340 F.3d at 1352.  A defendant has the burden to "present a compelling case" that jurisdiction would be unreasonable.  Breckenridge Pharma., Inc. v. Metabolite Laboratories, Inc., 444 F.3d 1356, 1362 (Fed. Cir. 2006) (quoting Burger King, 471 U.S. at 476-77).

    Here, Plaintiff is an individual residing in California and has a clear interest in protecting his intellectual property.  Further, California has a strong interest in protecting its residents from injuries.  See, e.g., Coyle, 340 F.3d at 1352; Beverly Hills Fan, 21 F.3d at 1568.  Defendant responds that defending this action in California would be burdensome and inefficient.  It maintains that it has six full-time employees and that the defense of this action would require travel to California

1  and the production of documents located in Tennessee.
2      Defendant's assertions are not persuasive.  Defendant's
3  defense of this patent infringement action will not likely require
4  its six employees to travel to California often, if at all.
5  Notably, some of Defendant's employees visit California annually
6  for trade shows, suggesting that such travel would not be unduly
7  burdensome.  Further, given advances in technology, document
8  production need not be onerous.  Defendant admits that some of the
9  potentially relevant documents in its possession are
10 "electronically maintained," Sutter Decl. ¶ 9, which would permit
11 Defendant to transfer these documents through email or portable
12 storage media, such as CDs or DVDs.  See Beverly Hills Fan, 21 F.3d
13 at 1569 (noting that "progress in communications and transportation
14 has made the defense of a lawsuit in a foreign tribunal less
15 burdensome") (citation and internal quotation marks omitted).
16 Defendant offers no evidence that document production in this case
17 would be difficult.
18      Accordingly, the exercise of specific jurisdiction is
19 appropriate and, as a result, venue in this judicial district is
20 proper.  Thus, Defendant's motion to dismiss must be denied.
21 III. Motion to Transfer Venue
22      Title 28 U.S.C. § 1404(a) provides as follows: "For the
23 convenience of parties and witnesses, in the interest of justice, a
24 district court may transfer any civil action to any other district
25 or division where it might have been brought."  In addition to the
26 three factors identified in section 1404(a), the Ninth Circuit
27 provides other factors the Court may consider: ease of access to
28                                  10

the evidence; familiarity of each forum with the applicable law; feasability of consolidation of other claims; any local interest in the controversy; relative court congestion and time to trial in each forum; location where the relevant agreements were negotiated and executed; the parties' contacts with the forum; difference in the costs of litigation in the two forums; and availability of compulsory process to compel attendance of unwilling non-party witnesses. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986); Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000). Another factor the Ninth Circuit has identified is the plaintiff's choice of forum. Secs. Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985). The Securities Investor court held that, unless the balance of the section 1404(a) factors "is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed." Id.; see also Decker Coal, 805 F.2d at 843 ("defendant must make a strong showing . . . to warrant upsetting the plaintiff's choice of forum").

The burden is on the defendant to show that, of the relevant factors, the balance of convenience weighs in favor of transfer to another district. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979).

For its motion to transfer, Defendant raises many of the same reasons it asserted to suggest that the exercise of specific jurisdiction would not be appropriate. Defendant's complaints about its employees' potential travel to California and the burden of document production are unavailing for the reasons stated above

11

and are not sufficient to upset Plaintiff's choice of forum.

Defendant also asserts that Tennessee has a greater interest than California in this litigation because it is where Defendant's products were designed and where many witnesses reside. However, as noted above, California has a strong interest in protecting its residents from patent infringement. Thus, this factor is neutral.

Finally, Defendant asserts that transfer is appropriate because the docket of the Middle District of Tennessee is less congested than this judicial district's. Defendant points to the disparity in the number of pending civil cases in each district. However, this is not the relevant statistic. Although the Middle District of Tennessee has fewer pending civil cases, it also has fewer judges. More probative is the median time interval from the filing of a civil complaint to the disposition of the case. In this judicial district, the median time interval for cases disposed of at trial is approximately twenty-four months; in the Middle District of Tennessee, it is approximately twenty-eight months. See Admin. Office of the U.S. Courts, Caseload Statistics 2010, Tbl. C-5, available at http://www.uscourts.gov/uscourts/Statistics/FederalJudicialCaseloadStatistics/2010/tables/C05Mar10.pdf. Thus, this factor does not weigh in favor of Defendant.

Accordingly, Defendant does not establish that the transfer of this action is warranted.

III. Motion to Strike

Defendant moves to strike the Hughes Declaration, filed in support of Plaintiff's opposition to the motion to dismiss.

12

Defendant complains that the declaration violates Civil L.R. 7-3(a) because it was not filed concurrently with Plaintiff's opposition. Although the declaration was not filed timely, Defendant fails to demonstrate that it suffered any prejudice.

Notably, Defendant's motion violates Civil L.R. 7-3(c), which requires a party to include any evidentiary and procedural objections to an opposition within its reply brief or memorandum. Defendant included such a section in its reply, asking that the Hughes Declaration be struck; it need not have filed a motion to request the same.

In the future, the parties shall adhere to the Civil Local Rules and the Court's Standing Order.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss, alternative motion to transfer and motion to strike. (Docket Nos. 7 and 27.) Defendant shall answer within fourteen days of the date of this Order. Fed. R. Civ. P. 12(a)(4)(A).

A case management conference is scheduled for February 8, 2011 at 2:00 p.m.

Dated: 1/21/2011

CLAUDIA WILKEN
United States District Judge